# STATE OF CONNECTICUT *v.* HERIBERTO LOPEZ
## (SC 16183)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued May 31—officially released August 15, 2000

*Lauren Weisfeld*, assistant public defender, for the appellant (defendant).

*Ronald G. Weller*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Gary Nicholson*, senior assistant state's attorney, for the appellee (state).

*Opinion*

VERTEFEUILLE, J. The defendant, Heriberto Lopez, appeals from a judgment of conviction for the crimes of murder in violation of General Statutes § 53a-54a,[1] conspiracy to commit murder in violation of General Statutes §§ 53a-48[2] and 53a-54a, and possession of a weapon in a motor vehicle in violation of General Statutes § 29-38.[3] On appeal, the defendant claims that the

---

[1] General Statutes § 53a-54a provides in pertinent part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

[2] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[3] General Statutes § 29-38 provides in pertinent part: "Any person who knowingly has, in any vehicle owned, operated or occupied by him, any weapon for which a proper permit has not been issued as provided in section 29-28 or section 53-206, or has not registered such weapon as required by section 53-202, as the case may be, shall be fined not more than one thousand dollars or imprisoned not more than five years or both, and the presence of any such weapon in any vehicle shall be prima facie evidence of a violation of this section by the owner, operator and each occupant thereof. . . ."

trial court improperly found that the confession of a third party declarant was untrustworthy and therefore inadmissible. We conclude that the trial court did not abuse its discretion in excluding the confession, and we therefore affirm the judgment of the Appellate Court.

This case returns to us for a second time. After a jury trial, the defendant was found guilty and sentenced to forty-five years imprisonment. During the trial, the court refused to admit the confession of a third party declarant, Lenise Nestir, finding that she was available to testify and that her hearsay statement was therefore inadmissible. The defendant appealed from his conviction to this court, and we transferred the appeal to the Appellate Court, which affirmed the judgment of conviction. *State* v. *Lopez*, 38 Conn. App. 434, 447, 662 A.2d 792 (1995). After granting the defendant's certification to appeal; *State* v. *Lopez*, 235 Conn. 919, 665 A.2d 907 (1995); we determined that the trial court had abused its discretion in finding that Nestir was available to testify. We therefore remanded the case to the trial court to determine whether the alleged third party confession was sufficiently trustworthy to have been admitted into evidence. *State* v. *Lopez*, 239 Conn. 56, 57, 681 A.2d 950 (1996).

On remand, the trial court found that the alleged confession was not sufficiently trustworthy to be admitted into evidence.[4] The Appellate Court affirmed the

Section 29-38 was amended by No. 99-212, § 14, of the 1999 Public Acts. The changes therein are not relevant to this appeal and, for purposes of clarity and consistency with the previous opinions regarding this case, we refer to the present revision of § 29-38, which is identical to the statute in effect at the time of the commission of the crime.

[4] Judge Stanley, who had presided over the original trial, died before addressing the trustworthiness of the alleged confession on remand. Judge Damiani, after reviewing the evidence, found that the statement was untrustworthy. In his decision, Judge Damiani noted the comments that Judge Stanley had made during his decision to exclude the statement, which included the following: "Even [if we were to assume] arguendo, [that Nestir] were found to be . . . unavailable . . . and her possession of the murder weapon eight days after the event is a significant connection to the crime,

judgment of the trial court; *State* v. *Lopez*, 54 Conn. App. 168, 177, 736 A.2d 157 (1999); and the defendant successfully petitioned this court for certification to appeal.[5] *State* v. *Lopez*, 250 Conn. 924, 738 A.2d 661 (1999). This appeal followed. We now affirm the judgment of the Appellate Court.

As indicated in the prior appeal to this court, the jury reasonably could have found the following facts. During the early evening of May 8, 1991, the victim, Elvis Crnkovic, and his brother, Paul Crnkovic, were playing basketball at the corner of Winthrop and Davenport Avenues in New Haven, when two cars approached. *State* v. *Lopez*, supra, 239 Conn. 59. The defendant sat in the front passenger seat of one of the cars, which was brown, armed with a .38 caliber revolver. Jorge Orta drove the other car, a gray Mazda, in which David Morales was a passenger. Id. The defendant and someone in the gray car fired shots and Elvis was shot in the back as he and his brother attempted to flee. Id., 59–60. Elvis later died as a result of his wounds. Id., 60.

Prior to the shooting, Nestir, one of the state's key witnesses at trial, was in the Liberty Street area of New Haven, where she saw Alex Romero driving a brown vehicle. Romero claimed to have a gun in his possession and asked whether anyone wanted to accompany him

which it may or may not be, the testimony by [Robin] Shade was unequivocal that the declarant was decidedly untrustworthy in her eyes. And so there's a matter of trustworthiness even if you get past the fact that she seems to be available. . . . [Shade] also said that she wouldn't accept anything that Miss Nestir said without proof. Now, it is not a matter of looking at a person and saying I know or don't know she is telling the truth. She said I wouldn't accept anything she said without proof. . . . The conclusion I reach is that she (A) is available and that (B) if she were unavailable the trustworthiness is seriously, seriously in doubt."

[5] We granted certification to appeal limited to the following issue: "Whether the Appellate Court properly affirmed the trial court's finding that the alleged third party confession was not sufficiently trustworthy to have been admitted into evidence?" *State* v. *Lopez*, 250 Conn. 924, 738 A.2d 661 (1999).

to Davenport Avenue. Id. Nestir explained that there was tension between a group of youths in the Liberty Street area, known as the "Liberty Street Posse," and another group in the Davenport Avenue area. At trial, Nestir testified that Romero and the defendant were members of the Liberty Street Posse. The defendant accepted Romero's invitation to accompany him and the two men drove away. While Nestir had declined Romero's invitation to accompany them, she walked to within one block of the shooting to watch. Id., 60–61.

From the intersection of Winthrop and Davenport Avenues, Nestir observed Romero's brown car approach, although she was unable to identify its occupants. Id., 61. Nestir saw shots fired from the vehicle. She denied seeing a gray car at the scene, although the state introduced evidence that shots were also fired from a gray car. Id.

After the shooting, Nestir saw the brown car, driven by Romero with the defendant and another male named Andrew as passengers, approach a nearby dumpster. Nestir observed Andrew empty shells from a gun into the dumpster. Id. Later that same day, Romero gave Nestir a gun and, according to Nestir's testimony, asked her to "get rid of it . . . because it was hot." Nestir did not dispose of the gun but, instead, kept the gun, hoping to exchange it for a car. Id. Later, the New Haven police, based upon a tip from an informant, seized the gun from Nestir but never charged her with an offense. Id.

During his case-in-chief, the defendant sought to introduce evidence that Nestir had confessed to committing the murder. Id., 62. The defendant called Robin Shade to make an offer of proof concerning self-incriminating statements that Nestir allegedly had made to

Shade. In these statements, Nestir claimed that she had shot the victim.[6] Id.

In this appeal, the defendant contends that the trial court abused its discretion in finding that Nestir's statement was untrustworthy despite the timing of the declaration and in light of the person to whom it was made, and the allegedly ample evidence that corroborated the statement. We disagree.

At the outset, we note that a trial court's ruling on the admissibility of evidence is entitled to great deference. See *State* v. *Castonguay*, 218 Conn. 486, 497, 590 A.2d 901 (1991). "[T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Citations omitted; internal quotation

---

[6] The defendant sought to admit the following testimony from Shade, which was given during an offer of proof to the trial court.

"[Defense Counsel]: What did [Nestir] tell you about Elvis [Crnkovic] being shot and killed?

"[Shade] She told me that her and [Paul Crnkovic (Paulie)] had a fight. . . . Paulie was supposed to smack her in the face and she said that no F-body is going to smack her in the face and she is going to go get some boys from Liberty Street to beat his butt. As far as I know she got a car full of guys and she said that one of them had the gun shooting it out the window up to the sky and she grabbed it from the guy and pointed it to Paulie and it didn't hit Paulie it hit someone else and she said it was his brother.

"Q. Did she tell you that?

"A. Yes, she did.

"Q. Was it soon after the shooting?

"A. Yes, it was. It was a day and a half almost [two] days after; a day and a half say."

marks omitted.) *State* v. *Hines*, 243 Conn. 796, 801, 709 A.2d 522 (1998). "This deferential standard is [generally] applicable to evidentiary questions involving hearsay . . . ." (Citation omitted.) Id., 801–802.

We recognized previously that "[t]he law regarding the admissibility of third party statements against interest is well settled. A *trustworthy* third party statement exculpatory of the accused and against the penal interest of the declarant is admissible at the trial of the accused if the declarant is unavailable. . . . The determination of whether such a statement is sufficiently trustworthy to be admitted into evidence at trial lies within the sound discretion of the trial court. . . . Four considerations have been deemed relevant when examining the trustworthiness of declarations against penal interest: (1) the time of the declaration and the party to whom the declaration was made; (2) the existence of corroborating evidence in the case; (3) the extent to which the declaration is really against the declarant's penal interest; [and] (4) the availability of the declarant as a witness." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Lopez*, supra, 239 Conn. 70–71. Although this court has often repeated these four considerations, we previously have not explicated the relative importance of each of the factors in the overall determination of the trustworthiness of a confession by a third party declarant.

We reiterate that as a threshold matter, it is necessary to determine that the third party is unavailable to testify. See *State* v. *DeFreitas*, 179 Conn. 431, 447, 426 A.2d 799 (1980) ("[there is] a threshold requirement of unavailability of the declarant for the admission of these third party declarations against penal interest"). We previously have stated that the necessity for having this exception to the hearsay rule results from the declarant's unavailability to testify at trial. Id., 440–41.

After the initial determination of unavailability, the trial court should then consider the remaining three factors in the determination of trustworthiness. We previously have emphasized, however, that " 'no single factor in the test we adopt for determining the trustworthiness of third party declarations against penal interest is necessarily conclusive' . . . ." *State* v. *Gold*, 180 Conn. 619, 633–34, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980), quoting *State* v. *DeFreitas*, supra, 179 Conn. 454 n.11. In allowing this exception to the hearsay rule, we are primarily concerned that "under the particular circumstances, the statement is trustworthy, that is, that safeguards reasonably equivalent to the oath and the test of cross-examination exist." *Ferguson* v. *Smazer*, 151 Conn. 226, 232, 196 A.2d 432 (1963) (third party declaration against pecuniary interest). Thus, it is not necessary that the trial court find that all of the factors support the trustworthiness of the statement. The trial court should consider all of the factors and determine whether the totality of the circumstances supports the trustworthiness of the statement.

We clarify today that in order to admit a third party statement against penal interest, the trial court must determine first, that the declarant is unavailable. Second, the trial court must find that the declarant's out-of-court statement was trustworthy by considering the following factors in the context of the totality of the circumstances: (1) the time of the declaration and the party to whom the declaration was made; (2) the existence of corroborating evidence in the case; and (3) the extent to which the declaration is against the declarant's penal interest.

Since there has been a threshold determination of unavailability of the declarant in the present case,[7] we

---

[7] We previously have determined that the declarant, Nestir, was unavailable. *State* v. *Lopez*, supra, 239 Conn. 74.

focus on the consideration of the remaining factors in order to determine the trustworthiness of the statement. There is no dispute that the alleged confession to murder was against Nestir's penal interest. *State* v. *Lopez*, supra, 239 Conn. 74. Therefore, we focus on the remaining two considerations, namely, the timing of the declaration and to whom the declaration was made and the existence of corroborating evidence.

The defendant first contends that the trial court abused its discretion in finding that the timing of the declaration and the person to whom it had been made were insufficient to support its trustworthiness. We afford the trial court broad discretion in deciding whether the timeliness of a statement indicates that it is trustworthy. In general, "declarations made soon after the crime suggest more reliability than those made after a lapse of time where a declarant has a more ample opportunity for reflection and contrivance." *State* v. *Bryant*, 202 Conn. 676, 699, 523 A.2d 451 (1987). A statement's timeliness, however, is not necessarily dispositive of the trustworthiness determination. See id. (confession made within hours of crime); *State* v. *Gold*, supra, 180 Conn. 634 (confession made within three months of murders); cf. *United States* v. *Satterfield*, 572 F.2d 687, 693 (9th Cir.), cert. denied, 439 U.S. 840, 99 S. Ct. 128, 58 L. Ed. 2d 138 (1978) (confession made two years after crime). In *State* v. *Hernandez*, 204 Conn. 377, 392, 528 A.2d 794 (1987), this court affirmed the trial court's exclusion of a confession made the day after the crime occurred because of a lack of circumstances that indicated it was trustworthy. Similarly, in the present case, although Nestir's confession was made promptly, within one and one-half days after the shooting, the timing of the statement alone is not sufficient to support its trustworthiness.

With respect to the second part of the first element of trustworthiness, we require that "the witness testi-

fying as to the statement must be one in whom the declarant would naturally confide." Id. "There must be a relationship in which the two parties to the conversation had a close and confidential relationship." *State* v. *Rivera,* 221 Conn. 58, 70, 602 A.2d 571 (1992); id., 70–71 (finding declarant's confession to brother did not meet relationship element of test because of evidence that they did not get along well, they did not grow up together, and declarant burglarized brother's apartment). Further, the burden of establishing the requisite relationship rests on the proponent of the statement. Id., 71.

Shade's testimony indicated that, although she and Nestir had a nine year relationship, it was not close or confidential. Approximately eight years prior to trial, Shade cared for Nestir for eleven months and again, six months later, for another nine months. Shade had stopped taking care of Nestir because she "just likes to go on the streets constantly." Since that time, Nestir had visited Shade quite often but Shade had restricted Nestir's visits to one hour stays and confined Nestir to the living room and bathroom of her home. Shade had imposed these restrictions because she was concerned that Nestir would get her children into trouble and exert a bad influence on them.

Moreover, Shade testified that Nestir had lied to her repeatedly. As a result, Shade did not always believe Nestir, and unless Nestir proved her statements, Shade would not rely on what Nestir had said. At trial, Shade stated unequivocally, "I didn't trust her." Although Shade testified that she thought she could discern when Nestir was lying, Shade did not testify that Nestir was telling the truth when she made this confession. Accordingly, although Shade's testimony established that she and Nestir had an ongoing relationship, the trial court did not abuse its discretion by deciding, again based

on Shade's testimony, that the relationship was not a close and confidential one.

The defendant further contends that the trial court abused its discretion in finding that there was insufficient corroborative evidence to establish the trustworthiness of Nestir's confession. He relies on two corroborative facts: (1) Nestir's possession of the murder weapon only eight days after the shooting; and (2) her presence near the vicinity of the shooting when it occurred.

We previously have emphasized that "[t]he corroboration requirement for the admission of a third party statement against penal interest is significant and *goes beyond minimal corroboration.*" (Emphasis added.) *State* v. *Rosado*, 218 Conn. 239, 249, 588 A.2d 1066 (1991). Third party statements that exculpate an accused are suspect because of the danger of fabrication. Id. Therefore, the statement must be accompanied by corroborating circumstances that *clearly indicate* the statement's trustworthiness. Id.

In the few cases in which this court has found that the trial court had abused its discretion by excluding such a statement, there was significant corroborating evidence. See *State* v. *Bryant,* supra, 202 Conn. 706 (remanded for new trial); *State* v. *Gold,* supra, 180 Conn. 660 (same). We have found that evidence significantly corroborated a confession where: (1) the declarant spontaneously confessed; (2) the declarant made incriminating statements to more than one person; (3) there was eyewitness testimony regarding the declarant's involvement in the crime; (4) the declarant's whereabouts were unknown at the time of the crime; (5) there was physical evidence tying the declarant to the crime; and (6) the declarant's actions after the crime were suspicious. See *State* v. *Gold,* supra, 634–37; *State* v. *Bryant,* supra, 701.

In *State* v. *Gold*, supra, 180 Conn. 634–37, this court determined that the alleged confession was corroborated sufficiently because: (1) the declarant had made the spontaneous confession the night he took his own life; (2) a second witness had overheard the confession on an extension telephone; (3) the declarant had made inculpatory statements to two witnesses, which included the declarant describing, within hours of the murders, that he was covered with blood and had "just done something that he wasn't going to be able to get out of"; (4) an eyewitness had seen the declarant running from the direction of the victims' home shortly after the murders; (5) the declarant had not been home during the time of the murders; (6) two witnesses had observed a bloody shirt in the declarant's home; and (7) the declarant had fled the state the day after the murders. Similarly, in *State* v. *Bryant*, supra, 202 Conn. 701, we found sufficient evidence to support the confession's trustworthiness where: (1) the declarant spontaneously had confessed to his mother, describing the means by which he had entered the victim's apartment; (2) the declarant had made statements to at least four individuals that he had planned to commit the crime or, afterward, that he had committed the crime; (3) an eyewitness' description of the assailant had matched the declarant; (4) the declarant had not been home at the time of the crime; (5) other witnesses had testified that the declarant had the victim's pocketbook and driver's license shortly after the crime, and the police later had found the victim's license at the declarant's home; and (6) the declarant had told his mother he would lie in court if called to testify at trial. In both of these cases, we determined that there was significant corroborating evidence that clearly indicated the trustworthiness of the confession.

In the present case, we cannot conclude that the trial court abused its discretion in finding that the evidence

did not meet the significant level of corroboration required for the admission of a hearsay statement. Although the alleged confession was spontaneous, there was no evidence presented that Nestir ever had repeated the statement or had made any inculpatory statements to persons other than Shade. Moreover, none of the eyewitnesses had identified Nestir, or any female, as one of the shooters.[8] There was no other physical evidence tying Nestir to the crime, nor any evidence that her actions afterward were suspicious. Nestir's possession of the murder weapon eight days after the shooting and her presence near the scene of the shooting were not necessarily sufficient to support the trustworthiness of the statement.

The trial court did not abuse its broad discretion by excluding Nestir's confession from evidence because it was not trustworthy. The evidence amply supported the trial court's findings that Shade and Nestir did not enjoy a close and confidential relationship, and that there was insufficient evidence corroborating Nestir's confession.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

---

[8] Only one witness, Jeanette Ayala, testified that Nestir was inside the gray vehicle at the time of the shooting. Ayala also stated, however, that a man named Moses, not Nestir, was the shooter.