STATE OF CONNECTICUT *v.* RAFAEL
ANTONIO RODRIGUEZ
(AC 32393)

Lavine, Keller and Bishop, Js.

Argued April 8—officially released September 24, 2013

*Pamela S. Nagy*, assigned counsel, for the appellant (defendant).

*Robert J. Scheinblum*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Anthony J. Spinella*, assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Rafael Antonio Rodriguez, appeals from the judgment of conviction, rendered after a trial to the jury, of assault in the third degree in

violation of General Statutes § 53a-61 (a) (1) and threatening in the second degree in violation of General Statutes § 53a-62.[1] On appeal, the defendant claims that the court (1) improperly denied his motion to open the evidence and (2) abused its discretion in concluding that Oscar Caamano was not an unavailable witness pursuant to § 8-6 (4) of the Connecticut Code of Evidence. The defendant also claims that there was insufficient evidence for the jury to have found him guilty of threatening in the second degree. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. While Jenesis Vega (Vega) was living in Florida, she met the defendant. During their brief romantic relationship, she became pregnant, and the two of them terminated their relationship during her pregnancy. Shortly after Vega gave birth to a daughter, who was eighteen months old at the time of the incident at issue in this appeal, she became romantically involved with Caamano, whom she had met when she was in high school in Connecticut. When Vega decided to return to her parents' home in Connecticut, she and the defendant became embroiled in a legal dispute over custody of their daughter. Eventually, they agreed to joint custody of their daughter.

When Vega returned to Connecticut, she met the defendant every other Sunday at the home of her mother, Zoraida Vega, in East Hartford, to transfer physical custody of their daughter for one week. Prior to the incident at issue, Caamano accompanied Vega and her daughter, but never participated in the transfer. On

[1] The defendant's conviction pertains to his conduct toward Oscar Caamano. The jury found the defendant not guilty of one count of assault in the third degree in violation of § 53a-61 (a) (1) and one count of threatening in the second degree in violation of § 53a-62 with respect to alleged conduct toward Jenesis Vega. The jury also found the defendant not guilty of risk of injury to a child in violation of General Statutes § 53-21 (a) (1).

September 28, 2008, the defendant arrived at Zoraida Vega's house before Vega. He telephoned Vega, who informed him that she was "right around the corner" and would arrive shortly. The defendant stated in response, "give me my fucking daughter. I just want my daughter." When Vega arrived, the defendant was visibly upset. As Vega was getting her daughter's things from the vehicle, the defendant pushed Vega into her vehicle, injuring her arm. He repeatedly stated, "[G]et my fucking daughter out of the car." Vega told the defendant to relax and that she would not let him take their daughter when he was upset.

The defendant opened the rear passenger door and attempted to remove his daughter from her car safety seat without first unbuckling the shoulder harness. Caamano interceded by positioning himself between the defendant and the vehicle. Vega then closed the vehicle door and locked it with a remote key.

Caamano also told the defendant to relax and that Vega would get the child out of the vehicle. Caamano testified that he wanted to calm the situation and to make sure that no one got hurt. The defendant told Vega that she needed to get her boyfriend away from him. Caamano continued to tell the defendant to relax. The defendant turned and punched Caamano. Caamano fell to the ground, bleeding from a deep cut on his chin that left a scar. The two men wrestled on the ground and punched one another. At one point, the defendant pinned Caamano against a fence in front of Zoraida Vega's house. Caamano tried to hold the defendant, who was swinging at him. He let the defendant go when the police arrived. The defendant stated to Caamano, "[I]t's not over and [I'm] going to get [you] real good."

Vega called 911 and called for the defendant to stop. The defendant told Vega, "[S]hut the fuck up, I'm going to get you." During the altercation, Zoraida Vega came

out of her home. She observed that the defendant had Caamano pinned against the fence and was hitting him. She tried to stop the fighting. The defendant was aggressive toward her, so she took the defendant's daughter into her home.

Officer Jeffrey Otis of the East Hartford Police Department responded to 33 Comstock Place in East Hartford to investigate a domestic disturbance. When he arrived, he spoke with Vega, Caamano, and the defendant. Otis observed a cut on Caamano's lip and an injury to his chin. The defendant told Otis that he had gone to the house to pick up his daughter and exchanged words with Caamano. The defendant claimed that Caamano threw the first punch and that he defended himself. Otis did not observe any injuries on the defendant's face or body where he claimed to have been struck by Caamano. On the basis of his investigation, Otis arrested the defendant for having assaulted Caamano. In December, 2008, Vega and Caamano went to the police station to provide written statements.

The defendant was charged with two counts of assault in the third degree in violation of § 53a-61 (a) (1), two counts of threatening in the second degree in violation of § 53a-62, and one count of risk of injury to a child in violation of General Statutes § 53-21. The charges against the defendant were tried in April, 2010. The defense theory was that Vega and Caamano initiated the fight in an effort to sever the defendant's relationship with his daughter. The defendant testified that, as a result of his arrest, the family court reduced his time with his daughter from every other week to every other weekend. The jury found the defendant guilty of the assault and threatening charges pertaining to Caamano, but found him not guilty of the charges related to Vega and his daughter. The court imposed a total effective sentence of one year in prison, execution suspended after eight months, followed by two years

of probation. Further facts and procedural history are set forth as necessary.

### I

The defendant claims that the court abused its discretion and deprived him of his constitutional right to a fair trial and to present a defense by denying his motion to open the evidence to present newly discovered evidence. We are unable to review the defendant's claim because he failed to make an offer of proof to create an adequate record for review. The defendant therefore cannot prevail on this claim.

The following additional facts underlie the defendant's claim. The state presented its case on the first day of trial and rested. As part of its case, the state presented testimony from Caamano. On the second day of trial, the defendant called his sister, Jessica Ortiz, among others, to testify. Later in the day, defense counsel stated to the court that, although Ortiz did not know who Caamano was or what he looked like, Ortiz had overheard an individual in the lobby of the courthouse make "some admissions regarding his conduct during the [subject] incident to an acquaintance . . . ." Defense counsel stated that the defense presumed that the individual Ortiz overheard was Caamano. The defendant requested a continuance to investigate the matter. The court denied the defendant's request for a continuance on the ground that it had already instructed the jury as to the trial schedule. The court also instructed defense counsel that "if your witnesses are here tomorrow, the court will take an offer of proof as to what your witnesses intend to say." The defendant continued to present his case until court recessed for the day.

On the third day of trial, defense counsel stated that she intended to call Caamano and to recall Ortiz. Caamano was not present, and a lengthy colloquy ensued

regarding his absence.[2] Outside the presence of the jury, defense counsel called defense investigator Courtney Ennis to testify about having served Caamano with a subpoena. A copy of the subpoena was marked as a court exhibit. Following additional colloquy among the court, the prosecutor, and defense counsel, the court found that Caamano was under subpoena from the defendant, and that he was not unavailable as a witness.[3]

[2] The transcript reveals the following colloquy:

"[The Prosecutor]: . . . Oscar Caamano is not here. He indicated to me this morning he never received a subpoena to be here, and he's not coming.

"The Court: Well, is he under a defense subpoena?

"[Defense Counsel]: He is, Your Honor. . . .

"The Court: When was it served?

"[Defense Counsel]: It was served the week before the evidence started last week. We called him up and notified him that we were going to require him here.

"[The Prosecutor]: He indicates, Judge, he never received a subpoena from the defense. That it was indicated to him yesterday he was released, which I know is a fact because I asked defense counsel when he was walking past me. And he doesn't intend to show. He says he never got a subpoena by the defense.

"The Court: Well, first the court will take up whether—the defense, yesterday, indicated to Mr. Caamano that he was released from the subpoena.

"[Defense Counsel]: Your Honor, we did not, absolutely did not, release Mr. Caamano from the subpoena. I mean, that is not my recollection at all. I—Your Honor had indicated you wouldn't ask . . . Mr. Caamano to testify as to an offer of proof. And I indicated to the state that I thought that he could leave. I didn't think he needed to wait around.

"The Court: Well, did Mr. Caamano receive a subpoena from an investigator in your office?

"[Defense Counsel]: He did, Your Honor, here in the courthouse.

"The Court: And what would have to happen in this matter is this: You would have to call your investigator as a witness, not in the evidentiary portion of the trial but at this time. Mr. Caamano is not here. If your investigator states that he served the subpoena personally, in hand, then Mr. Caamano has not responded to the subpoena. Therefore, [he] becomes unavailable. And, therefore, possibly you may be able to proceed under the statement against penal interest provision of the code. But let's not get ahead of ourselves."

[3] The court made the following findings: "Based on the short inquiry that the court has just conducted, Mr. Caamano was under a defense subpoena. He did not, perhaps, understand that he had to appear for the defense case today, but neither did the public defender's office make diligent efforts to secure his appearance today. . . .

"There was no message left in the office of the state's attorney that Mr. Caamano should report, under the defense subpoena, to the courtroom

The jury returned to the courtroom, and the defendant recalled Ortiz to the witness stand. Ortiz testified that, following her testimony the previous day, she left the courtroom and was in the courthouse lobby where she overheard a conversation between two men. One of the men was the man depicted in state's exhibit 3, which is a photograph of Caamano, whom she had not previously seen. Defense counsel asked Ortiz what she heard the man she identified as Caamano state. The state objected on the ground of hearsay, and defense counsel responded that Ortiz' testimony was admissible as either a statement against penal interest on the ground that Caamano was unavailable to testify, in light of § 8-6 (4) of the Connecticut Code of Evidence,[4] or

today. Such an effort would have constituted a minimal diligent effort to secure the appearance of Mr. Caamano under the defense subpoena. That effort was not made. Mr. Caamano may have, in good faith, understood that he was released from any subpoena and did not have to return to testify. As such, the court cannot make a finding, prospectively, that Mr. Caamano was unavailable as a witness.

"And if Mr. Caamano is unavailable as a witness, the defense still had to make a certain showing concerning whether the statement [was] against penal interest, but the threshold showing of unavailability cannot be made. So, counsel, you may call the witness which you have, and the state is free to exercise any objection. . . .

"The court has already heard from counsel, as officers of the court, that there was no personal contact made with Mr. Caamano last night or today. Any representation as to what Mr. Caamano believed may simply be conjecture. When Mr. Caamano was here in the courthouse, in the state's attorney's office, there was no representation made to the court today that the defense, through any agent of defense counsel's office, indicated to the office of the state's attorney that Mr. Caamano was to remain in the building for purposes of appearing under the defense subpoena today. Those are the court's findings."

[4] Section 8-6 of the Connecticut Code of Evidence provides in relevant part: "The following are not excluded by the hearsay rule if the declarant is unavailable as a witness . . . (4) Statement against penal interest. A trustworthy statement against penal interest that, at the time of its making, so far tended to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. In determining the trustworthiness of a statement against penal interest, the court shall consider (A) the time the statement was made and the person to whom the statement was made, (B) the existence of corroborating evidence in the case, (C) the extent to which the statement was against the declarant's penal interest. . . ."

as a prior inconsistent statement. The court rejected both of defense counsel's proffered grounds for admission of Ortiz' testimony and sustained the state's objection on the ground that the court previously had found that Caamano was not an unavailable witness, as § 8-6 (4) requires. The court, however, denied the state's motion to strike Ortiz' testimony. The defendant then rested his case. After hearing the state's offer of proof regarding the testimony of a rebuttal witness, the court denied the state's request to present rebuttal evidence.

Defense counsel then stated to the court that the defense investigator "apparently [has] been able to locate Mr. Caamano and has told me that he's coming back." The court stated: "Mr. Caamano will not be allowed to testify. The court has already ruled [on] that."[5] The defense failed to request that it be permitted to make an offer of proof as to the substance of Caamano's testimony and made no offer of proof.

On appeal, the defendant acknowledges that he did not preserve his claim that the court's refusal to open the evidence violated his constitutional right to a fair trial and to present a defense,[6] but he claims that this court should review the claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[7] We

---

[5] When the court returned to the bench following a short recess, it stated that it "essentially denied defense counsel's motion to reopen the defense case and call Mr. Caamano. The defense, as the court recalls, had rested and then indicated that Mr. Caamano was in the building. And the court denied or did not permit Mr. Caamano to testify, essentially, implicitly, denying a defense motion to reopen its case after resting."

[6] The state points out that according to the record, including the trial court docket, the defendant did not file a motion for a new trial to present newly discovered evidence.

[7] Pursuant to *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional

agree that an unpreserved claim of constitutional magnitude can be reviewed on appeal *if*, and only if, the record is adequate for review, which is the first of the four *Golding* prongs. See *State* v. *Kitchens*, 299 Conn. 447, 466–67, 10 A.3d 942 (2011) (first two prongs of *Golding* concern reviewability).

We conclude that the record here is inadequate for review because the defendant failed to make an offer of proof outside the presence of the jury as to the substance of Ortiz' testimony regarding the conversation she allegedly overheard between Caamano and another man in the courthouse. In his brief, the defendant argues that evidence should not be excluded from the fact finder as long as it is relevant and mitigates a crime charged. See *State* v. *Brocuglio*, 56 Conn. App. 514, 521, 744 A.2d 448, cert. denied, 252 Conn. 950, 748 A.2d 874 (2000). Without a transcript of Ortiz' proffered testimony, however, we are unable to determine whether her testimony about Caamano was in fact relevant and would have mitigated against the crimes with which the defendant was charged. The defendant concedes that "it is unknown how Caamano would have testified . . . ." Because the record is inadequate for our review, the defendant's claim fails.[8]

violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances. The defendant bears the responsibility for providing a record that is adequate for review of his claim of constitutional error." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[8] In the alternative, the defendant claims that the court abused its discretion by failing to open the evidence. This claim fails as well due to an inadequate record. "[T]he reopening of a criminal case either to present omitted evidence or to add further testimony after either of the parties has rested is within the sound discretion of the Trial Court. . . . If the trial court finds that inadvertence or some other compelling circumstance . . . justifies a reopening and no substantial prejudice will occur, it is vested with the discretion to reopen the case. . . . It must be shown, however, that the proffered evidence was of such importance to the achievement of a just result that the need for admitting it overrides the presumption favoring

## II

The defendant claims that the court improperly determined that Caamano was not an unavailable witness. Even if we were to agree that the court improperly determined that Caamano was not an unavailable witness, the defendant cannot prevail on his claim because he cannot demonstrate prejudice.

To utilize the statement against penal interest exception to the rule against hearsay, the proponent of the evidence must demonstrate that the declarant is unavailable. See *State* v. *Schiappa*, 248 Conn. 132, 141, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999). "In light of the fact-bound nature of the inquiry, [t]he trial court has broad discretion in determining whether the proponent has shown a declarant to be unavailable. A trial court's determination of the unavailability of a witness will be overturned only if there has been a clear abuse of discretion." (Internal quotation marks omitted.) Id. Moreover, overturning such an evidentiary ruling requires "a showing by the defendant of substantial prejudice or injustice." *State* v. *Lopez*, 254 Conn. 309, 314, 757 A.2d 542 (2000).

Even if we assume, but by no means decide, that the court abused its discretion in finding that Caamano was not an unavailable witness,[9] the defendant cannot demonstrate that the court's ruling prejudiced him. Defense counsel's amorphous representations regarding a conversation that Ortiz allegedly overheard in the courthouse between two men, one of whom who was presumed to be Caamano, does not elevate the defendant's claim beyond the realm of speculation. The

enforcement of the state's usual trial procedures." (Citations omitted; internal quotation marks omitted.) *State* v. *Anderson*, 209 Conn. 622, 634–35, 553 A.2d 589 (1989). Without an adequate record, the defendant cannot make the required showing.

[9] See footnote 3 of this opinion.

record fails entirely to reflect the substance of what Ortiz' testimony would have been, and the defendant therefore cannot meet his burden of showing that the court's evidentiary ruling regarding Caamano's availability prejudiced him. See id.

## III

The defendant claims that the evidence was insufficient to support his conviction of threatening in the second degree in violation of § 53a-62. Specifically, he argues that the record lacks evidence from which the jury reasonably could have found that his words caused Caamano to fear any serious physical injury, as Caamano did not flee the scene, nor did he testify that he was fearful of the defendant. The state contends that the evidence that the defendant threatened Caamano by stating that "[I'm] going to get you real good" is sufficient to sustain the jury's verdict. We agree with the state.

At the conclusion of the state's case, the defendant made an oral motion for a judgment of acquittal. The court denied the motion. We review the relevant legal standards. "A defendant who asserts an insufficiency of the evidence claim bears an arduous burden. We first review the evidence in a light most favorable to sustaining the verdict and then must decide whether the jury reasonably could have concluded as it did." *State* v. *Hopkins*, 62 Conn. App. 665, 669–70, 772 A.2d 657 (2001).

Section 53a-62 (a) provides in relevant part: "A person is guilty of threatening in the second degree when: (1) By physical threat, such person intentionally places or attempts to place another person in fear of imminent serious physical injury . . . ." General Statutes § 53a-3 (4) provides: " 'Serious physical injury' means physical injury which creates a substantial risk of death, or

which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ."

The circumstances surrounding a threat may be considered when determining whether the jury reasonably could infer that "the defendant had placed the victim in fear of imminent serious physical injury . . . ." (Internal quotation marks omitted.) *State* v. *Gibson*, 75 Conn. App. 103, 124, 815 A.2d 172 (2003), rev'd in part on other grounds, 270 Conn. 55, 850 A.2d 1040 (2004). "[T]he law does not equate imminent with immediate. A threat does not require immediate menace of violence or acts showing a present ability and will to execute the threat. . . . A threat imports the expectation of bodily harm, thereby inducing fear and apprehension in the person threatened. A threat, unlike an assault, is not limited by time or distance." (Internal quotation marks.) Id., 123–24.

Our review of the record discloses that on the date in question, the defendant was upset when Vega arrived at the location where she was to transfer physical custody of her daughter to the defendant. The defendant pushed Vega and tried to take his daughter from her car seat without removing the shoulder harness. When Caamano tried to get between the defendant and the open car door, the defendant pushed him. After the defendant told Vega to get her "man out of [his] face," he turned and punched Caamano in the face, causing a deep cut that left a scar. Caamano grabbed the defendant's arms to restrain him and to keep him from swinging at him. The defendant pinned Caamano against the fence and bit his shoulder.

When asked what his intention was in the scuffle, Caamano stated, "Just basically so [the daughter] wouldn't get harmed, and also [I] had already seen him pushing [Vega] against the fence and everything. I knew

that, you know, he's obviously upset, and no telling what's going to happen next. I just wanted to make sure that nothing happened to [the daughter]." Caamano testified that the defendant "said that it's not over and [the defendant is] going to get me real good."

When viewed in the light most favorable to sustaining the verdict, we conclude that the jury reasonably could have inferred from the evidence that the defendant intentionally placed or attempted to place Caamano in fear of imminent serious physical injury. The defendant told Vega to get her man "out of my face," and then immediately struck Caamano in the face, causing a deep wound that left a scar.[10] The defendant continued to wrestle and punch Caamano. The defendant's behavior and acts lent credence to his threat that "it's not over" and that he was "going to get [Caamano] real good." In addition, Caamano testified that he was apprehensive of what the defendant was going to do: "[The defendant was] obviously upset, and no telling what's going to happen next." The defendant demonstrated a then present ability to harm Caamano. See *State* v. *Gibson*, supra, 75 Conn. App. 124.

The facts of the present case are analogous to those in cases previously decided by this court. In *Gibson*, this court found sufficient evidence to uphold the conviction of threatening. In *Gibson*, the defendant stated to the victim that "when [I get] out of jail, it is going to be just [you and me]. From that statement, and the factors surrounding it, namely, the victim's age, her

---

[10] Whether the state has proved that a victim suffered serious physical injury when the victim sustains a facial scar is a question for the jury to determine. See *State* v. *Nival*, 42 Conn. App. 307, 678 A.2d 1008 (1996). When the jury has an opportunity to see the scars on the victim's face, the court properly may conclude that the "jury reasonably could have found that the evidence of the scars on the victim's face constituted serious, permanent disfigurement." *State* v. *Anderson*, 74 Conn. App. 633, 644, 813 A.2d 1039, cert. denied, 263 Conn. 901, 819 A.2d 837 (2003).

knowledge of the defendant's prior assaults against her sister J, her telling her grandmother and sisters, and the force used against her so that she would listen to the threat, it was reasonable for the jury to infer that this encompassed a threat of serious physical injury . . . ." (Internal quotation marks omitted.) Id., 123.

Like the defendant in this case, the defendant in *State* v. *Snead*, 41 Conn. App. 584, 677 A.2d 446 (1996), claimed that the state had failed to show that he placed or attempted to place the victim in fear of imminent physical injury. Id., 591. The defendant had grabbed the victim from behind, "placed an object against her throat and demanded her money." Id., 586. After the victim gave the defendant her purse, he shoved her to the ground and took her wallet. Id. "Later that day, the victim received a telephone call at home, threatening that if she went to the police, she would be 'as good as dead.'" Id. Although the victim did not personally testify as to her fear, this court concluded that there was sufficient evidence to prove that the defendant had placed the victim in fear of imminent physical injury. Id., 594.

Here, although Caamano did not testify that he was placed in fear of the defendant, the defendant's violent acts of aggression toward Caamano and threat of getting Caamano "real good" provided sufficient evidence for the jury reasonably to infer that the defendant had placed Caamano in fear of imminent physical injury.[11]

---

[11] The defendant relies on two New York cases to support his claim. See *In the Matter of Davonte B.*, 44 App. Div. 3d 763, 844 N.Y.S.2d 68 (2007); *People* v. *Peterkin*, 245 App. Div. 2d 1050, 1051, 667 N.Y.S.2d 559 (1997), leave to appeal denied, 91 N.Y.2d 1011, 698 N.E.2d 968, 676 N.Y.S.2d 139 (1998). We conclude that those cases are distinguishable legally and factually. Most importantly, the text of the New York statute at issue in the cases relied upon by the defendant is dissimilar to our threatening statute, to wit: "[a] person is guilty of menacing in the third degree when, by physical menace, he or she intentionally places or attempts to place another person in fear of death, imminent serious physical injury or physical injury." N.Y. Penal Law § 120.15 (McKinney 2009). Compare General Statutes § 53a-62 (a). Moreover, as a factual matter, neither of the complainants in the New

We therefore conclude that there was sufficient evidence to support the jury's finding the defendant guilty of threatening in the second degree.

The judgment is affirmed.

In this opinion the other judges concurred.

York cases suffered an injury caused by a defendant prior to having been threatened.