******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* KIPP MENDEZ WIGGINS
(AC 36951)

DiPentima, C. J., and Prescott and Bear, Js.

*Argued May 14—officially released September 8, 2015*

(Appeal from Superior Court, judicial district of
Litchfield, geographical area number eighteen,
Marano, J.)

*Michael Zariphes*, assigned counsel, for the appellant (defendant).

*Kelli N. Ford*, certified legal intern, with whom were *Nancy L. Chupak*, senior assistant state's attorney, and, on the brief, *David S. Shepak*, state's attorney, and *Devin T. Stilson*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

PRESCOTT, J. The defendant, Kipp Mendez Wiggins, appeals from the judgment of conviction, rendered after a jury trial, of one count of criminal violation of a protective order in violation of General Statutes § 53a-223.[1] On appeal, the defendant claims that the trial court improperly denied his motion for judgment of acquittal. Specifically, he argues that (1) there was insufficient evidence to prove beyond a reasonable doubt that the defendant had actual notice of the protective order and its terms; and (2) the complainant's "testimony was incredible as a matter of law." We affirm the judgment of the court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to our discussion. The defendant and the female complainant were acquainted to each other prior to the underlying incident. The defendant had visited the complainant's place of residence and work where he would leave gifts and "many notes" for her.[2] On December 2, 2009, the complainant encountered the defendant in the driveway of her house. When she asked the defendant to leave her alone, he responded, "[i]f only I could."

Following the defendant's arrest for criminal trespass in the third degree and stalking on December 7, 2009, the court issued a protective order against the defendant and for the protection of the complainant. The order specifically provided, inter alia, that the defendant "shall refrain from coming within 100 yards of the [complainant]" or "having any contact in any manner" with her. In addition, the order stated that it would remain "in effect until final disposition of the criminal case or until further order of the court."

While that case was pending, on March 31, 2010, at approximately 5 p.m., the complainant was sitting in her automobile that was parked in the driveway of her residence. At that time, she observed the defendant ride his bicycle by her. During the encounter, the defendant made and maintained eye contact with the complainant and smiled. The encounter lasted for approximately a minute, with no more than fifty-five feet separating the parties. Once the defendant had left, the complainant called the police.

The responding state trooper, James Parker, interviewed the complainant and thereafter proceeded to the defendant's residence to "find both sides of the story." When Parker asked the defendant about the circumstances of the incident, the defendant stated that he had gone by the complainant's house earlier that evening without knowing whether she was there or not, and then added that he loved her. In addition, the defendant indicated that he knew that "he was not supposed to be near there or near the complainant."[3]

Subsequently, the defendant was arrested and

charged with criminal violation of a protective order. Specifically, the state accused the defendant of violating the conditions of the protective order "by coming within one hundred yards of the [complainant]." A jury trial was held on September 13, 2011.

At trial, in addition to the testimony of the complainant and Parker, the state called Eric Groody, deputy chief clerk of the Superior Court at geographical area 18 in Bantam where the protective order had been issued. Groody testified that he had been in his position for eighteen years, and that one of his functions as deputy chief clerk was to make sure that the court adhered to all laws pertaining to the issuance of protective orders. Groody further testified that, in Bantam, when a person is charged with an offense and a protective order is necessary, such an order is drafted by Family Relations and then presented to the court. Thereafter, according to Groody, the court may make any modifications to the order, if necessary, read the terms and conditions of such order to the accused on the record, and hand a signed copy of the order to the accused before he or she leaves the courtroom.[4] When questioned whether that practice had been followed in this particular case, Groody testified that the "business practice in processing protective orders [is followed] for every one of the family arraignments that we have."[5] Groody did, however, concede during cross-examination that he had no recollection of having been present at the time the protective order was issued to the defendant.

Once the state had rested its case, the defense counsel orally moved for a judgment of acquittal, arguing that the state failed to prove beyond a reasonable doubt that the defendant had notice of the protective order, and that the complainant's testimony at trial differed from what she had told the police at the time of the incident. After argument, the court denied the motion for judgment of acquittal from the bench. Thereafter, the jury found the defendant guilty, and the court then sentenced him to five years incarceration, execution suspended after twenty-two months, with five years probation. This appeal followed. Additional facts will be set forth as necessary.

I

We begin by setting forth the standard of review governing claims of insufficient evidence. "A defendant who asserts an insufficiency of the evidence claim bears an arduous burden." (Internal quotation marks omitted.) *State* v. *Rodriguez*, 146 Conn. App. 99, 110, 75 A.3d 798, cert. denied, 310 Conn. 948, 80 A.3d 906 (2013). "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have

concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offence, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact . . . but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [jury] may draw whatever inferences from the evidence or facts established by the evidence [that] it deems to be reasonable and logical. . . .

"[In addition], [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [jury's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Papandrea*, 302 Conn. 340, 348–49, 26 A.3d 75 (2011).

It is well settled that in order to "prove a charge of criminal violation of a protective order, the state must demonstrate that a protective order was issued against the defendant in accordance with General Statutes §§ 46b-38c (e) or 54-1k, and it must demonstrate the terms of the order and the manner in which it was violated by the defendant." (Internal quotation marks omitted.) *State* v. *Hasfal*, 94 Conn. App. 741, 744–45, 894 A.2d 372 (2006). On appeal, however, the defendant argues that § 53a-223 (a) has an additional implicit element of actual notice by the defendant of the protective order, which the state needs to prove beyond a reasonable doubt in order to obtain a criminal conviction.[6] According to the defendant, notice must be proven because "the fair-warning requirement embodied in the Due Process Clause prohibits the States from holding an individual criminally responsible for conduct which

he could not reasonably understand to be proscribed." (Internal quotation marks omitted.) *Rose* v. *Locke*, 423 U.S. 48, 49, 96 S. Ct. 243, 46 L. Ed. 2d 185 (1975).

In this case, the defendant argues that he is entitled to a judgment of acquittal because the state "failed to educe at trial sufficient evidence to prove beyond a reasonable doubt that he had actually received in person or through the mail and/or had actually been given notice of the protective order at issue . . . ." Although the state continues to argue that notice is not an essential element of § 53a-223, it concedes in its brief that "broadly speaking, as a matter of due process, a defendant cannot be convicted of [a] criminal violation of a protective order if the evidence demonstrated that he did not have notice of the protective order . . . ."[7]

Although we find the defendant's argument that actual notice is an implicit element of § 53a-223 appealing, we need not decide that claim because we conclude that, even if it were an essential element, the state presented sufficient evidence for the jury to conclude beyond a reasonable doubt that the defendant had actual notice of the protective order.[8]

First, Parker testified that the defendant, during questioning, had admitted to him that he knew he was not supposed to be near the complainant. From this admission, the jury reasonably could have inferred that the defendant knew about the protective order and its terms. Specifically, because the defendant's statement directly relates to one of the restrictions within the order—the requirement to refrain from coming within 100 yards of the complainant—the jury reasonably could have concluded that the defendant's knowledge that he must not be near the complainant stemmed from the restrictions within the order and not from some other source.

Second, Groody testified that it was the practice of the Bantam courthouse to provide a copy of a protective order to the judge at a defendant's arraignment so that the judge could explain the requirements of the order to the defendant and then ensure that the defendant is handed a copy of the protective order. Groody also testified that this "business practice in processing protective orders [is followed] for every one of the family arraignments that we have." From his testimony, the jury reasonably could have inferred that this standard courthouse procedure had been adhered to in the instant case, and that the defendant in fact had been explained the terms of the order and was given a copy at his arraignment. See *State* v. *Lavigne*, 121 Conn. App. 190, 196, 995 A.2d 94 (2010) ("[triers of fact] are not required to leave common sense at the courtroom door" [internal quotation marks omitted]), aff'd, 307 Conn. 592, 57 A.3d 332 (2012). This evidence, taken together with the defendant's statement to Parker that he knew that he was not permitted to be near the complainant,

is sufficient evidence from which the jury could have concluded beyond a reasonable doubt that the defendant had actual notice of the protective order. See *State* v. *Crafts*, 226 Conn. 237, 245, 627 A.2d 877 (1993) ("[t]here is, in fact, no rule of law that forbids the resting of one inference upon facts whose determination is the result of other inferences" [internal quotation marks omitted]). Accordingly, the defendant cannot prevail on his insufficiency of the evidence claim.

## II

The defendant's second claim, that the complainant's "testimony was incredible as a matter of law" because it was inconsistent with an earlier statement she had made to the police, merits little discussion. It is beyond dispute that "[i]t is the exclusive province of the trier of fact to weigh conflicting testimony and make determinations of credibility, crediting some, all or none of any given witness' testimony." (Internal quotation marks omitted.) *State* v. *DeMarco*, 311 Conn. 510, 519–20, 88 A.3d 491 (2014); see also *State* v. *Mejia*, 233 Conn. 215, 224, 658 A.2d 571 (1995) ("we must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude" [internal quotation marks omitted]).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-223 (a) provides: "A person is guilty of criminal violation of a protective order when an order issued pursuant to subsection (e) of section 46b-38c, subsection (f) of section 53a-28, or section 54-1k or 54-82r has been issued against such person, and such person violates such order."

We note that this subsection has been amended since the date of the offense. See, e.g., Public Acts 2014, No. 14-173, § 5; Public Acts 2011, No. 11-152, § 11. Because these amendments do not affect issues in this appeal, all references to § 53a-223 are to the current revision of the statute.

[2] During that time, the complainant's residence and place of employment were located in the same building.

[3] At trial, the following colloquy took place between the prosecutor and Parker:

"[The Prosecutor]: Did [the defendant] indicate to you in any sense that he was aware of a protective order?

"[Parker]: Yes, he did, sir.

"[The Prosecutor]: What did he tell you?

"[Parker]: He said that he . . . knew he was not supposed to be near there or near [the complainant]."

[4] During Groody's testimony, the state introduced, and the court admitted, a certified copy of the protective order as a full exhibit.

[5] We note that the defendant did not object to Groody's testimony regarding the business standard of the Bantam courthouse in matters concerning the issuance of a protective order.

[6] We note that, despite his claim that notice is an element of the offense, the defendant did not object to the court's instructions to the jury on the essential elements of § 53a-223. Those instructions did not state that notice is an element of the offense or that the state must prove notice beyond a reasonable doubt. We further note that, on appeal, the defendant has not sought review, pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), of any claim of instructional error.

[7] Despite this concession, the state argues that proof of notice is unnecessary because it is inherent in the statutory scheme regarding the issuance of protective orders. In other words, the state contends that because the protective order was issued pursuant to the statutory scheme, the defendant

had constructive notice of it. Because we conclude that the evidence is sufficient to prove beyond a reasonable doubt that the defendant had actual notice of the protective order, we need not address the state's argument that actual notice is not an essential element of § 53a-223.

[8] In his brief, the defendant argues that "it was imperative that the [s]tate introduce into evidence, either through the court clerk whom was at the proceeding wherein the protective order was issued to the defendant or the transcript of the court proceeding wherein the defendant actually received the protective order, as well as, was explained its terms, conditions and restrictions by the judge."

Although we agree with the defendant that introduction of direct evidence, such as the transcript of the arraignment hearing, by the state would have likely satisfied the state's burden to prove notice, we are not persuaded that this is the only way for the state to prove that the defendant had notice of the protective order. To impose such a requirement would contradict our well established principle that "it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct." (Internal quotation marks omitted.) *State* v. *Papandrea*, supra, 302 Conn. 349.

———————————————